# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**JESSE STAPLES**                                        **CASE NO.  6:20-CV-00192**

**VERSUS**                                               **JUDGE ROBERT R. SUMMERHAYS**

**TAYLOR INTERNATIONAL**                                 **MAGISTRATE JUDGE WHITEHURST**
**SERVICES INC., ET AL.**

## RULING

Before the Court is a Motion for Summary Judgment filed by Defendants Taylor International Services, Inc. and Taylors International Services FZ, LLC (collectively, "Taylors" or "Defendants").[1] Defendants seek dismissal of all claims brought against them by Plaintiff Jesse Staples. Staples opposes the motion, and Defendants have replied.[2] For the reasons that follow, Defendants' motion is DENIED.

## I.
### BACKGROUND

Plaintiff Jesse Staples brings this suit against Taylors, his former employer, for discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102, *et seq.*[3] Taylors provides remote site services (e.g. catering, housekeeping, laundry) for the United States government and commercial enterprises across the world.[4] Staples was hired by Taylors in September 2014 as Director of Procurement and Executive

---

[1] ECF No. 55.
[2] ECF Nos. 65, 69.
[3] Staples' Complaint additionally sets forth a claim for failure to accommodate under the ADA. However, in his opposition to Defendants' summary judgment motion, Staples expressly withdraws that claim. ECF No. 65 at 5.
[4] ECF No. 55-4 at 303-04.

Director for its office in Dubai, United Arab Emirates.[5] The parties executed a written employment contract with a term running from September 16, 2014 to September 15, 2015, and an option to renew the contract for additional one-year periods.[6] Staples' employment contract was renewed three times, extending Staples' employment through September 2018. Plaintiff received no complaints regarding his performance over the first three years and eight months of his employment.

In 2015, Staples and his immediate supervisor, Barry Johnson (Taylors' Chief Operating Officer), traveled to Iraq to conduct an inventory and to meet with Jamie Williams, Taylors' President of Operations for Europe, the Middle East, and Asia.[7] This trip to Iraq appears to have triggered mental and physical health-related issues rooted in Staples' prior military service. From 2001 to 2004, Staples served in the United States Army and was deployed to Iraq during the invasion phase of the Iraq War.[8] During this deployment, Staples suffered several head injuries during combat and endured prolonged, traumatic combat-related experiences.[9] Staples testified that, although he had returned to Iraq previously with a different employer without incident, the 2015 trip on behalf of Taylors was different.[10] Specifically, unlike his prior travels, he and Johnson were in the exact same location where Staples had previously been in combat.[11] There was also gunfire nearby and they were unarmed with no security and were traveling in an unarmored vehicle.[12] Staples and Johnson also had to walk

---

[5] ECF No. 65-1 at 1. Staples was residing in Dubai prior to his employment with Taylors.
[6] ECF No. 55-4 at 17.
[7] *Id.* at 47; ECF No. 65-2 at 68.
[8] ECF No. 55-4 at 39-40.
[9] *Id.* at 40-41; ECF No. 65-2 at 48.
[10] ECF No. 55-4 at 47-48.
[11] *Id.*
[12] *Id.*

past Iraqis in military uniforms and were told that there had been sniper fire on the U.S. Embassy days prior to their arrival.[13] Following the trip, Staples' symptoms from his prior brain injuries worsened, and his mental health symptoms increased. In September 2017, Staples began seeking treatment.[14] Ultimately, Staples was diagnosed with PTSD and TBI, both of which were related to his combat service in Iraq.[15]

On October 4, 2017, Staples emailed Johnson the following:

Good morning Barry,

I wanted to let you know I am diagnosed with some mental health disabilities. Related to this I will need some schedule flexibility from time to time i.e. to attend local based therapy and to travel back to the US for additional examinations. I don't have the exact dates yet but they are likely to be towards the middle or end of November. Aside from the travel time offline and appointments I can still be accessible and work (will take laptop).

Please let me know if this is good to go and or if you need anything from my end? If you need a letter from my Doctor, please let me know and I'll get it sent over.

This is a very private and personal matter for me, so I request this please be kept confidential between us, as I directly report to you, and with HR only if absolutely necessary.[16]

In his sworn statement, Staples states that he asked Johnson to maintain confidentiality because he was apprehensive about disclosing his disabilities to Taylors given "the negative stigma surrounding mental health disabilities in my industry (government contractor)."[17] Staples notes that during his trip to Iraq for Taylors, Johnson and Williams told him "that they

---

[13] *Id.*

[14] *Id.* at 41-44.

[15] ECF No. 65-2 at 47-48. Staples' PTSD is characterized by intrusive recollections, avoidance, inability to sleep, exaggerated startle response, nightmares, mood disturbance and anxiety features. *Id.*; *see also* ECF No. 65-2 at 68.

[16] ECF No. 55-4 at 101-02.

[17] ECF No. 65-2 at 68.

did not think [Staples'] predecessor could mentally handle working in Iraq where he would be required to travel the country unarmed and without security, including an armored vehicle."[18] He further notes that during his first year with Taylors, Tarik Masri (who was Taylors' Chief Commercial Officer at the time, but is now Taylors' CEO) asked Staples if he had ever "killed anyone in Iraq," which Staples states made him very uncomfortable.[19] In light of the foregoing, as well as "other incidents," Staples shared only enough information about his disability with Taylors as necessary in order for him to attend his treatment appointments.[20]

Within a few hours of Staples' October 4, 2017, email, Drake Ward, Director of Human Resources, responded to Staples:

Jesse,

Barry asked me to assist with your request and information. I want to assure you that our conversation between Barry, Myself and You will stay 100% confidential. We will handle this matter with care and respect.

You will be allowed to take a leave of absence if you choose to do so. I do request a few pieces of information so we can proceed.

We will need a doctors (your primary care physician) diagnosed [sic] of absence (Doctors Letter). We will also need the dates of when you will need to take leave, so we can plan accordingly.

Lastly, anytime a leave of absence is granted for medical reasons. [sic] We will need a full Fit for Duty/Return to Work physical performed and documented by your primary care physician once you are ready to work.

Please don't hesitate to contact me on this issue. At the end of the day we want to make sure you are taking [sic] care of medically. Again our conversations going forward will be 100% confidential.[21]

---

[18] *Id.*
[19] *Id.* at 69.
[20] *Id.*
[21] ECF No. 55-4 at 101.

Staples then provided Ward with the requested doctor's letter, which reads in pertinent part:

> I am treating Jesse Staples for one or more diagnosed mental health disabilities, which cause substantial limitations in the major life activity(s) of eating, sleeping, concentrating, as well as others given the inherent nature of the diagnosis.
>
> Given the diagnosed disabilities and associated limitations, Jesse needs accommodation for the attendance of ongoing therapy and additional examinations.
>
> Requested accommodation for schedule flexibility during the work week, will allow Jesse to attend ongoing Dubai based therapy.
>
> Requested accommodation for a temporary remote work arrangement, this will allow Jesse Staples to remain working while traveling to and attending additional examinations in the United States, allowing him to further treatment in Dubai. The exact dates and time-frame of this arrangement will be as per examination appointments made and allocated to Jesse. It is however expected to be a week or less in time-frame and towards the middle or end of November 2017.
>
> Further to the diagnosed disabilities and associated limitations, Jesse does have ongoing difficulty in life functions, however at this time Jesse is attempting to work through these limitations without accommodation beyond that of which is requested.
>
> Should there be any specific questions related to Jesse's accommodation needs and to discuss other accommodation options if required.[22]

After submitting this letter, Staples was not asked to provide any further information regarding his disability.[23] Ultimately, Staples left Dubai for treatment from November 29 to December 6, 2017.[24] Plaintiff attests that despite his mental health disabilities and treatment, he was able to "perform all assigned work duties for Defendants with a flexible work schedule," which allowed him to attend therapy and treatment "while making up the hours the same day."[25]

---

[22] *Id.* at 291.
[23] *See e.g.* ECF No. 65-2 at 69.
[24] ECF No. 55-4 at 98.
[25] ECF No. 65-2 at 70; *see also* ECF No. 55-4 at 98-99.

On May 14, 2018, Johnson emailed Staples about various problems the company was experiencing with their procurement department in Mexico and instructed Staples to travel to Mexico "ASAP" and "get control of purchasing."[26] Staples immediately called Johnson and asked that he be allowed to perform the work remotely on this occasion because he had a prescheduled doctor's appointment for "treatment and examination" related to his disability.[27] According to Staples, Johnson responded, "Am I supposed to tell Butch [Darce] that? Butch isn't going for this."[28] The following day, Staples sent an email to Johnson, reiterating his request for an accommodation for his "disabilities covered under ADA," and also advising that his family currently needed his support, as his wife had recently suffered complications during childbirth.[29] Staples noted that he has "jumped to any challenge and travel requirements . . . , but unfortunately am not able to travel now."[30] Finally, he suggested he could "conduct the training remotely via Skype, Phone, Email, Screen Sharing Programs etc.," and that he would "work later hours to accommodate the time difference for Mexico's mornings."[31] Johnson responded the same day, "I will travel to Mexico and handle it myself. I will train your employees to do their jobs and I will correct the chicken vendor issue."[32] Staples states it was unusual for Johnson to respond to him "in a condescending manner."[33] Staples further states he "often trained staff and managed issues in Mexico remotely" while employed with Taylors, and this was the only occasion he had requested an accommodation relating to travel to

---

[26] ECF No. 65-2 at 43.
[27] *Id.* at 70.
[28] *Id*; "Butch" Darce was the founder of Taylors and its CEO at that time.
[29] ECF No. 65-2 at 42.
[30] *Id.*
[31] *Id.* at 43.
[32] *Id.*
[33] *Id.* at 70.

Mexico.[34] Staples testified that after this email exchange, he was "cut out" of Taylors' Mexico operations over which he previously exercised oversight.[35]

One month later, on July 16, 2018, an employee of Taylors emailed Staples indicating that Defendants had posted an announcement that they were in search of a Director of Procurement—i.e., Staples' position.[36] A few days later, the same employee emailed Staples again, stating she had asked Masri about the job posting, and he told her "a couple of things that involved, 'No, Jesse is not leaving…..but please don't send that to him.'"[37] In light of these events, on July 16, 2018, Staples sent an email to Johnson and Ward stating:

> Good morning Drake & Barry,
>
> I would like to, as a result of recent events and information enquire as to the current nature of my employment status and receive clarity on the intent of Taylors regarding the same?
>
> In short form, I recently made a request for accommodation for a previously disclosed ADA covered disability, of which are also service connected. The request for accommodation is a protected activity. Shortly after this, there have been a number of matters that I view as discriminatory and retaliatory.
>
> I also request to know, if my disclosure has been further disclosed or disseminated to anyone else within Taylors?
>
> Note below as a brief example of the above:
>
> 1. Adversarial tone and language in response emails to accommodation request.
> 2. Reduction and shift of responsibilities as well as being cut out of and removed from communications that have been and remain a part of my position and function.

---

[34] *Id.*
[35] ECF No. 55-4 at 64.
[36] ECF No. 65-2 at 67.
[37] *Id.* at 67.

3. Multiple Taylors employee's [sic] notifying me that they have heard my termination is forthcoming and I will not be around for long.
4. Current position is posted by Taylors online.

Thank you in advance for your time and I am looking forward to your response on the above.[38]

Less than two hours later, Ward responded to Staples, copying Johnson and Butch Darce:

1. As your current nature of employment is concerned, all Taylor's employee current jobs are only known by our CEO/President (Butch). Currently you are our Procurement Director.
2. Regarding the current job posting: Yes, we are in search of an ***addition*** [sic] Procurement Director to oversee Mexico, USA Gulf/Land, (Western Hemisphere). As our company continues to grow, we adapt and evolve. We are venturing into new markets like DLA food & fuel and we are looking to be proactive.
3. Rumors of your termination: Rumors are Rumors and are always from non-reliable sources
4. Responsibilities: Your current responsibilities will continue to be what they are. We've had to make changes to multiple employees [sic] responsibilities because of the lack of production, example Mexico. We will continue to make responsibility changes within the company as we see fit.
5. ADA: We have made accommodations for you. Traveling to the US to take care of your personal health issues, while ***keeping you off*** any kind of medical, personal, company leave. (Also this information has not been disclosed to any non-essential Taylors personnel). This has remained confidential and will continue to be.

Also, We are making changes at a global level in our company. Just for your information, we are in talks about enlarging our Dubai office to accommodate accounting staff members, an office for our senior management to work when they travel in the area and etc.

We need you to continue your responsibilities and stop worrying about rumors, No-nonsense issues and just focus on your JOB.

I am truly sorry you are feeling this way and by no means are we looking to discriminate you [sic] at any level.

---

[38] ECF No. 55-4 at 503-04.

One month later, on August 16, 2018, Ward notified Staples that his employment contract would not be renewed when it expired on September 15, 2018, and that his last day with Taylors would be September 15, 2018.[39] The only reason Taylors provided to Staples for his termination was that Staples' employment contract had expired and Taylors had decided not to renew it.[40]

## II.
### SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[41] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[42] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[43]

The opposing party may not create a genuine dispute simply by alleging that a dispute exists. Rather, the opponent must cite "to particular parts of materials in the record," or show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[44] When reviewing a motion for

---

[39] *Id.* at 395-96; *id.* at 21.
[40] ECF No. 55-4 at 21; ECF No. 65-2 at 38-39.
[41] FED. R. CIV. P. 56(a).
[42] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[43] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[44] FED. R. CIV. P. 56(c)(1); *see also id.* at (c)(3) (the court need only consider the cited materials, although it is permitted to consider other materials in the record as well).

summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[45] Credibility determinations, assessments of the probative value of the evidence, inferences drawn from the facts and the like are not to be considered on summary judgment, as those are matters to be decided by the factfinder at trial.[46]

**III.**
**ANALYSIS**

**A.    Disability Discrimination**

The ADA prohibits discrimination by an employer against a qualified individual based on that individual's disability.[47] In a discriminatory-termination action under the ADA, an employee may use direct evidence, circumstantial evidence, or both to establish a claim of unlawful discrimination.[48] In cases where the plaintiff produces only circumstantial evidence of unlawful discrimination, a motion for summary judgment is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[49] Under this framework, a plaintiff must first make a *prima facie* showing of discrimination. This *prima facie* showing requires the plaintiff to come forward with evidence that: (1) he is disabled within the meaning of the ADA, (2) he was qualified for the job, and (3) there was a causal connection between his

---

[45] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001).

[46] *See e.g. Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 478 (5th Cir. 2006); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[47] 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees.")

[48] *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 525 (5th Cir. 2022); *see also Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020) (evidence is direct if it proves discriminatory animus without inference or presumption).

[49] *McDonnell Douglas*, 411 U.S. 792 (1973); *Gosby* at 525.

termination and his disability.[50] The burden of establishing a *prima facie* case of disparate treatment under the ADA is not onerous.[51] If a *prima facie* case is established, a presumption of discrimination arises, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.[52] If the employer does so, the burden shifts back to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is a pretext for discrimination.[53]

### 1.   The employee's prima facie burden.

The Court finds Staples has met the first two elements of his *prima facie* burden. A plaintiff satisfies the first element if he shows he has "a physical or mental impairment that substantially limits one of more of the major life activities."[54] This is "not a demanding question."[55] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[56] Staples' Declaration and the letter from his treating doctor adequately demonstrate that his PTSD substantially limits his major life activities of eating, sleeping, and concentrating. Additionally, PTSD is included in the implementing regulations' list of impairments that "should easily be concluded . . . [to] substantially limit brain function."[57]

---

[50] *Gosby* at 526; *Kitchen* at 252; *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

[51] *Gosby* at 527.

[52] *Kitchen* at 252; *Gosby* at 526.

[53] *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016); *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021).

[54] 42 U.S.C. § 12102(1)(a).

[55] *Epley v. Gonzalez*, 860 Fed.Appx. 310, 312–13 (5th Cir. 2021) (citing 42 U.S.C. § 12102(4)(A) ("The definition of disability . . . shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.").

[56] 42 U.S.C. §12102(2)(A).

[57] 29 C.F.R. § 1630.2(j)(3)(iii).

There is also no dispute that Staples was qualified for his position as Director of Procurement, which satisfies the second element of his *prima facie* burden.

The Court further finds Plaintiff has established the third element of his *prima facie* burden—*i.e.*, there is evidence in the record from which a reasonable jury could conclude that he was subject to an adverse employment decision on account of his disability. Temporal proximity between a protected activity and an adverse employment action can be sufficient to establish causation at the *prima facie* stage in disability discrimination cases, provided the protected activity and adverse employment action are close in time.[58] The Fifth Circuit has held "that a six-and-a-half-week timeframe is sufficiently close, but that a five month lapse is not close enough, without other evidence of [discrimination], to establish the 'causal connection' element."[59] Here, Staples testified that his supervisor reacted negatively to his request for accommodation with regard to travelling to Mexico in May 2018. He further testified that, within two months of the requested accommodation (July 2018), he was removed from his responsibilities for overseeing Taylors' Mexico operations and Taylors advertised an opening for his position. One month later (August 2018), Taylors informed Staples that his contract would not be renewed. This notice also occurred within one month of Staples' complaint of discrimination and retaliation. The Court finds that this showing is sufficient to satisfy the third element of Plaintiff's *prima facie* burden.

---

[58] *Gosby*, 30 F.4th at 527; *see also Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 578 (5th Cir. 2020); *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021).
[59] *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (citations omitted); *see also Gosby* at 527 (temporal proximity principle for satisfying the causal connection element applies to discrimination claims, as well as retaliation claims).

**2.      The employer's burden as to the reason for the adverse employment action.**

At the second step of the *McDonnell Douglas* inquiry, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination "with sufficient clarity to afford the employee a realistic opportunity to show that the reason is pretextual."[60] Courts "are not to assess the employer's credibility or the truthfulness of its reason at this stage of the inquiry."[61] At this step, the employer merely bears "the burden of production, not persuasion," and the proffered reason will be found sufficient if supported by admissible evidence.[62] Here, Taylors asserts that it did not renew Staples' employment contract due to poor job performance and a corporate restructuring.[63] No argument is made that the proffered reasons are unsupported by admissible evidence. Accordingly, the Court finds that this showing shifts the burden back to Staples to show that the legitimate nondiscriminatory reasons proffered by Taylors are merely a pretext for discrimination.[64]

**3.      Employee's burden to show pretext.**

At the third step of the *McDonnell Douglas* inquiry, an employee "must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual."[65] An employee meets this burden "by presenting evidence of disparate treatment

---

[60] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) (internal quotation marks omitted); *see also Gosby* at 526.

[61] *Burton* at 231 (emphasis omitted) (quoting *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004)).

[62] *Burton* at 232 n.10 (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).

[63] ECF No. 55-2 at 14-16. Taylors cites to a number of other reasons for its non-renewal of Staples' employment contract. ECF No. 55-2 at 15-16. However, because Taylors did not discover these additional issues until after it made the decision to terminate Staples' employment, the Court declines to address them. *See e.g. Burton* at 231, 232 (after-acquired knowledge is not to be considered).

[64] *Burton*, 798 F.3d at 233.

[65] *Gosby* at 527; *see also Burton* at 233 ("Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.").

or by showing that the employer's proffered explanation is false or unworthy of credence."[66] Evidence that an employer's explanation is false or unworthy of credence, combined with a plaintiff's *prima facie* case, is likely to support an inference of discrimination.[67] "In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext."[68]

<u>Job Performance</u>

The parties agree that Darce was the ultimate decisionmaker with regard to Staples' termination.[69] Darce testified that he declined to renew Staples' employment contract "based on poor performance, period."[70] Specifically, Darce testified Staples inadequately vetted a supplier, Star Alliance, resulting in a "legal action" that cost Taylors money.[71] Darce testified that he sent Johnson to Dubai to investigate the issues with Star Alliance, and Johnson reported back to Darce that Staples "screwed up."[72] Darce testified that he did not put the issues with Staples' poor performance in writing, because he did not wish to destroy Staples' reputation and negatively impact his future employment opportunities.[73] Darce additionally testified that he did not immediately terminate Staples because he wanted Staples' assistance with the Star Alliance litigation.[74] Staples, however, points to Johnson's testimony that Staples bore no fault for the failed relationship with Star Alliance, and that Johnson never heard any questions raised

---

[66] *Gosby* at 527 (internal quotation marks omitted).
[67] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation").
[68] *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2007).
[69] *See e.g.* ECF No. 55-4 at 609-10.
[70] *Id.* at 631.
[71] *Id.*; *see also id.* at 680.
[72] *Id.* at 603-04.
[73] *Id.* at 602, 631.
[74] *Id.* at 601, 632-33.

about Staples' job performance.[75] Staples further argues that performance issues were merely a pretext because it is undisputed that Staples was never counseled about his job performance, he had no negative performance reviews, he was never disciplined, and Taylors has produced no documentation regarding any performance issues.[76]

The Court finds that Staples has produced sufficient evidence, for purposes of summary judgment, to refute Taylors' evidence that poor job performance was the reason for Staples' termination. Staples has pointed to Johnson's testimony that he never had any discussions about Staples' job performance with Darce, which is sufficient to raise an issue of fact at the pretext stage. Further, "when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext."[77] Finally, the temporal proximity between Staples request for an accommodation and Darce's decision to terminate Staples provides additional evidentiary support for pretext.[78] Darce testified that he made the decision to terminate Staples around mid-May to early June of 2018.[79] Staples had asked for an accommodation with regard

---

[75] *Id.* at 156; *see also id.* at 111. Johnson testified both he and Staples vetted Star Alliance; that during his employment with Taylors approximately fifteen vendors did not work out and Star Alliance was the only one of those vendors who Staples was involved with. *Id.* at 175, 177. In Staples' Declaration, he states Star Alliance was vetted in the same manner as all other vendors, and multiple executive-level employees were involved in the vetting process. ECF No. 65-2 at 71.

[76] ECF No. 65-1 at 25; ECF No. 65 at 17.

[77] *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1195 (5th Cir. 1992); *see also Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1465 (5th Cir. 1989) ("where the only evidence of intent is oral testimony, a jury could always choose to discredit it").

[78] *January v. City of Huntsville*, 22-20380, 2023 WL 4698905, at *5 (5th Cir. July 24, 2023) ("While temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason, . . . the combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment.")..

[79] ECF No. 55-4 at 575; *see also id.* at 579, 607-08, 631.

to travelling to Mexico on May 14, 2018. Thus, the decision to terminate Staples was made almost immediately after Plaintiff made his second request for a disability accommodation.[80]

<u>Restructuring/Cost Savings</u>

Taylors asserts that Plaintiff was terminated due to a corporate restructuring, necessitated by "time zone difficulties, decline in work in the Middle East and needs of clientele."[81] According to Taylors, its corporate restructuring plan entailed eliminating Johnson's job as COO, moving Staples' job as Director of Procurement from Dubai to Lafayette, Louisiana," and consolidating Johnson and Staples' job duties with the new Director of Procurement position in Lafayette.[82] Taylors argues that this consolidation of positions, along with the elimination of Taylors' physical office in Dubai, provided Taylors' with cost savings.[83] In that regard, Taylors points to: (1) a July 16, 2018 email to Staples which, according to Taylors, shows that Taylors "advised plaintiff that the company was making changes on a global level,"[84] (2) the fact that on July 23, 2018 Johnson "was laid off and his position eliminated,"[85] and (3) the testimony of Drake Ward that Taylors was "looking to have a procurement director here in Lafayette at our global headquarters."[86] Staples responds that this reason is pretextual because: (1) Taylors has failed to support this reason with any documentation; (2) Taylors assured Staples in the July 16, 2018 email that "his position was

---

[80] Taylors additionally argues it declined to renew Staples' contract due to his handling of vendor issues in Mexico, citing a discussion in Staples' deposition about a June 21, 2018 email from Jorge Cosenza, wherein Cosenza "expressed his displeasure with plaintiff's job performance." ECF No. 55-3 at 4, ¶ 26. As this email exchange post-dates Darce's testimony that he made the decision to fire Staples in mid-May to early June of 2018, it will not be considered by the Court. *See Burton* at 231, 232.

[81] ECF No. 55-3 at 6, ¶ 44.

[82] *Id.* at 6, ¶¶ 44-46; ECF No. 55-2 at 15.

[83] *Id.*

[84] ECF No. 55-3 at 4, ¶ 33.

[85] *Id.* at 5, ¶ 34; *see also* ECF No. 55-4 at 396-398.

[86] ECF No. 55-4 at 256. Ward knew of no other reason for Staples' termination. *Id.*

secure," (3) no one from Taylors ever approached Plaintiff about relocating to Louisiana, (4) Taylors has admitted that Staples could and did work from home during his employment and, therefore, any assertion that Taylors saved costs on office space is pretextual, and (5) Taylors' corporate reorganization explanation is contrary to the explanation Taylors provided to the EEOC.[87]

First, the Court finds that the July 2018 email relied upon by Taylors appears to indicate that, rather than eliminating employment positions, Taylors was *expanding*.[88] Second, restructuring/cost savings is not among the reasons Taylors provided to the EEOC for Staples' termination. Third, Darce testified that, as of September 6, 2018, he would have *rehired* Staples, but he did not ask Staples to relocate to Lafayette because Staples had told him several years earlier that he wanted to remain in Dubai.[89] In his Declaration, however, Staples denies ever telling Darce he would not work in the United States, and states he would have relocated to Lafayette had Taylors asked.[90] This evidence—particularly the "inconsistent and shifting explanations" provided for Staples' termination and the close temporal proximity between Staples' request for accommodation and his termination—is sufficient to "lead to a reasonable inference of pretext."[91]

---

[87] ECF No. 65 at 7-8, 15-16.
[88] ECF No. 55-4 at 503 ("Regarding the current job posting: Yes, we are in search of an **addition** [sic] Procurement Director to oversee Mexico, USA Gulf/Land, (Western Hemisphere). As our company continues to grow, we adapt and evolve. We are venturing into new markets like DLA food & Fuel and we are looking to be proactive. . . . Just for your information, we are in talks about enlarging our Dubai office to accommodate accounting staff members, an office for our senior management to work when they travel in the area and [sic] etc.")
[89] *Id.* at 651, 658-59.
[90] ECF No. 65-2 at 72.
[91] *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 830-31 (5th Cir. 2022); *Gosby*, 30 F.4th at 528.

In sum, for purposes of summary judgment, Staples has produced sufficient evidence to contest and refute Taylors' evidence of legitimate, nondiscriminatory reasons for Staples' termination. Staples has thus created a genuine issue of material fact as to whether Taylors had a legitimate, nondiscriminatory reason for terminating him, or whether its articulated reasons were pretextual. Accordingly, summary judgment on Staples' claim of discrimination in violation of the ADA is denied.

**B.    Retaliation**

As with the claim of disability discrimination, *McDonnell Douglas* provides the framework for claims of unlawful retaliation under the ADA.[92] Under this framework, an employee "must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action."[93] Here, Staples satisfies his *prima facie* burden.

As to the first element, the ADA provides in relevant part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter. . . ."[94] "[S]tating one's belief that discrimination has occurred 'virtually always' constitutes opposition, except in 'eccentric cases.'"[95] Here, Staples' July 16, 2018 email to Taylors states his belief that discrimination had occurred: "I recently made a request for accommodation for a previously disclosed ADA covered disability, of which are also service connected. The request for accommodation is a protected activity. Shortly after this, there have

---

[92] *Clark v. Champion Nat'l Sec., Inc*., 952 F.3d 570, 588 (5th Cir. 2020).
[93] *Id.* (quoting *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348-49 (5th Cir. 2019)).
[94] 42 U.S.C. § 12203(a).
[95] *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 224 (5th Cir. 2023) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*., 555 U.S. 271, 276–77 (2009)); *see also St. John v. Sirius Sols., LLLP*, 299 Fed.Appx. 308, 309 (5th Cir.2008).

been a number of matters that I view as discriminatory and retaliatory."[96] Thus, Staples has shown that he engaged in activity protected by the ADA.  As to the second element of his *prima facie* case, Staples has shown that he was subjected to an adverse employment action, as he was terminated within a month of this email. As to the third element, Staples has demonstrated a causal connection between the protected activity and his termination for the same reasons discussed in connection with is discrimination claim.[97]

Where, as here, the plaintiff successfully makes a *prima facie* showing of retaliation under the ADA, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action …[i]f the employer does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for the discriminatory or retaliatory purpose."[98] A plaintiff must rebut "each nondiscriminatory or nonretaliatory reason articulated by the employer."[99] Evidence that casts doubt on the truth or legitimacy of the proffered reasons for an adverse employment action can be used to show pretext.[100] Temporal proximity is relevant at the pretext stage but is insufficient, standing alone, to demonstrate that a proffered reason is pretextual.[101] At the pretext stage, temporal proximity is only "one of the elements in the entire calculation."[102]

---

[96] ECF No. 55-4 at 504.
[97] *See* Section III(A)(1), *supra.*
[98] *Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 675-76 (5th Cir. 2021).
[99] *Id.*
[100] *Brown*, 969 F.3d at 578.
[101] *Id.* at 579 (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)).
[102] *Strong*, 482 F.3d at 808 (citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir.1992) (finding that the plaintiff proved retaliation by showing temporal proximity, a lack of disciplinary history throughout a nine-year employment, termination on the basis of incidents for which no evidence existed, and repeated harassment by a supervisor about an EEOC complaint)).

As discussed in connection with Staples' discrimination claim, Taylors has satisfied its burden of coming forward with legitimate, nondiscriminatory reasons for Staples' termination.[103] The burden thus shifts back to Staples to show that Taylors' proffered reasons for his termination are pretextual—in other words, that his termination would not have occurred "but for" Taylors' retaliatory motive. While "but-for" causation is a higher standard than what is required at this step for a discrimination claim, the record supports a reasonable inference of causation. Specifically, when Staples made a request for accommodation to his supervisor on May 14, 2018, his supervisor responded, "Am I supposed to tell Butch [Darce] that? Butch isn't going for this."[104] The following day, Staples sent an email reiterating his request for "accommodation for alternative arrangements to the requested travel" in order to continue his pre-scheduled treatment for his "diagnosed disabilities covered under the ADA."[105] His supervisor responded, "I will travel to Mexico and handle it myself. I will train your employees to do their jobs and I will correct the chicken vendor issue."[106] Within two months, Taylors had posted an announcement that they were in search of a Director of Procurement, which was Staples' position. One month after that (August 16, 2018), Staples was informed his employment contract would not be renewed. Further, Darce testified that he made the decision to terminate Staples in mid-May or early June.[107] This evidence supports a reasonable inference that Darce's decision to terminate Staples was made contemporaneously with, or shortly after, Staples' second request for a disability accommodation. Moreover, as

---

[103] *See* Section III(A)(2), *supra.*
[104] ECF No. 65-2 at 70.
[105] *Id.* at 42.
[106] *Id.* at 43.
[107] ECF No. 55-4 at 575; *see also id.* at 579, 607-08, 631.

discussed in connection with Staples' discrimination claim, the evidence in the summary judgment record casts doubt on Taylors' proffered reasons for Staples' termination—his alleged poor performance and Taylors' corporate reorganization.

In sum, a reasonable juror could conclude that Taylors' proffered reasons for Staples' termination are pretextual. For these reasons, the Court concludes that Staples has raised a genuine issue of material fact as to whether Taylors unlawfully retaliated against Staples for engaging in protected activity. [108] Accordingly, the Court denies the Motion for Summary Judgment with respect to Staples' retaliation claim.

## IV
### CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Taylor International Services, Inc. and Taylors International Services FZ, LLC is DENIED.

THUS DONE in Chambers on this 4th day of August, 2023.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[108] *See e.g. Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001).